

United States Courts
Southern District of Texas
FILED

MAY 12 2014

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CRIMINAL NO.** |
| **vs.** | § | |
| | § | **18 U.S.C. § 2** |
| | § | **18 U.S.C. § 1349** |
| | § | **18 U.S.C. § 1347** |
| | § | |
| **(1) RACHEL CHUNDENU** | § | |
| **KIENTCHA-TITA, M.D.;** | § | |
| **(2) CHARLES HARRIS, a.k.a.** | § | **14 CR 195** |
| **CELESTINE NWAJFOR , a.k.a.** | § | |
| **OKECHI NWAJIOFOR, a.k.a.** | § | |
| **CELESTINE NNAJIOFOR;** | § | |
| **(3) STELLA UCHEOMA AKWARANDU,** | § | |
| **a.k.a. STELLA ADAUGO AKWARANDU;** | § | |
| **(4) LORETTA N. MBADUGHA; and** | § | |
| **(5) VITUS NWOSU OFOMA;** | § | |
| **Defendants** | | |

## <u>INDICTMENT</u>

THE GRAND JURY CHARGES:

### <u>COUNT ONE</u>
### <u>CONSPIRACY TO COMMIT HEALTH CARE FRAUD</u>
### 18 U.S.C. § 1349

#### A. INTRODUCTION

#### THE MEDICARE and MEDICAID PROGRAMS

1.     Medicare is a federally funded health insurance program designed to provide

medical care to individuals over age 65 and individuals with disabilities. The

1

Medicare payment system is composed of two divisions: Medicare Part A (hospital insurance) and Medicare Part B (medical insurance). Medicare Part A helps pay for inpatient hospital stays, skilled nursing facility services, home health services and hospice care. Medicare Part B helps pay for physician services, outpatient hospital services, medical equipment and supplies, and other health care services and supplies. Among the types of reimbursable medical assistance available to covered persons is vestibular testing.

2. Although Medicare is a federal program, private insurance organizations, called intermediaries or carriers, contract with Medicare to process and pay claims submitted by health care providers. TrailBlazer Health Enterprises, LLC, of Dallas, Texas, has entered into a contract with Medicare to administer the Medicare Part B program for Texas. Providers, upon receipt of their provider number, receive procedure manuals, bulletins and updates regarding billing, including local coverage determinations. During the time frame of this indictment, these documents were mailed to providers and later were available online.

3. The Medicaid program is a state-administered health insurance program funded by the United States Government and by the State of Texas. The Medicaid program helps pay for reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs.

2

The Texas Medicaid program is a cooperative federal-state program to furnish medical assistance to the indigent. Among the types of reimbursable medical assistance available to covered persons are vestibular testing.

4. The State of Texas contracts with Texas Medicaid & Healthcare Partnership (hereinafter referred to as TMHP) to process and pay claims submitted by health care providers.

5. The Medicaid Program in Texas may pay a portion of a claim originally submitted to Medicare in the event the patient has both Medicare and Medicaid coverage. This portion is generally 20 percent of the Medicare allowance for the billed charge. Such claims are sent to Medicaid once processed by Medicare. Medicaid will pay its portion if Medicare originally allowed the claim. If a Medicaid recipient is not also a Medicare beneficiary, the claims may be submitted directly to Medicaid.

6. Medicare and Medicaid cover vestibular testing. The following six billing codes represent the following vestibular diagnostic tests:

(A) Code 92541 is a spontaneous nystagmus test, which measures eye movement, with a recording. This test is administered by watching lights in different sequences. It is billed in one (1) unit. The Medicare reimbursement rate is approximately $42.94 per unit.

(B) Code 92542 is a positional nystagmus test, with a minimum of four (4) positions, with a recording. This test is administered by laying the patient down quickly with their head in different positions and with their head being lower than their shoulders. It is billed in one (1) unit. The Medicare reimbursement rate is approximately $45.02 per unit.

(C) Code 92543 is a caloric (warm and cool) vestibular test, involving the use of water irrigation. It constitutes four (4) tests, with a recording. It is billed in four (4) units. The Medicare reimbursement rate is approximately $84.32 per unit.

(D) Code 92544 is the optokinetic nystagmus test, with a recording. The patient watches a series of targets moving simultaneously to the right and left. It is billed in one (1) unit.

(E) Code 92545 is an oscillating tracking test, with a recording. The patient watches lights in different, moving sequences. This test is billed in one (1) unit. The Medicare reimbursement rate is approximately $33.10 per unit.

(F) Code 92546 is a sinusoidal vertical axis rotational test using a rotating chair. The test is usually performed in a darkened room, while lights are show on a wall. The patient wears goggles and sits in the chair with a safety harness. This test is billed in one (1) unit. The Medicare reimbursement rate is approximately $63.84 per unit.

(G)  Code 92547 is the use of vertical electrodes, which are attached to the patient, as part of vestibular testing, and is billed in one (1) unit.  The Medicare reimbursement rate is approximately $19.52 per unit.

7.    The following diagnostic codes may also be used as part of billing for vestibular test: 386.10, 386.12; 386.19

8.    The provider, in this case RACHEL CHUNDENU KIENTCHA-TITA (TITA), agrees to retain all original source documentation and medical records for five years.

9.  As a Medicare and Medicaid provider, TITA agrees to submit accurate and truthful claims.

10.    In order to bill Medicare or Medicaid, one must be an enrolled provider.

11.    Vestibular testing usually must be performed by a licensed physician, under the direct supervision of a licensed physician or by a licensed audiologist, as defined by state and federal law, as well as by Medicare and Medicaid rules and regulations.  Physical therapy also must be performed by a licensed physical therapist, as defined by state and federal law, as well as by Medicare and Medicaid rules and regulations.

## B. THE DEFENDANTS

12. RACHEL CHUNDENU KIENTCHA-TITA, M.D., defendant herein, is a licensed physician in Texas, doing business as Medstar Primary Care Clinic, located in Houston, Texas.

13. CHARLES HARRIS (HARRIS), also known as CELESTINE NWAJFOR, OKECHI NWAJIOFOR, and CELESTINE NNAJIOFOR; was doing business as Cevine Health Care and Rehabilitation Center (CEVINE), located in Houston, Texas.

15. STELLA UCHEOMA AKWARANDU (AKWARANDU), doing business as Patstel Healthcare and Rehabilitation Services (PATSTEL); as Uchestar Helathcare & Rehabilitation, Inc., doing business as Uchestar Healthcare & Rehabilitation Services (UCHESTAR), and as Star Rehabilitation Center, Inc., doing business as Star Healthcare & Rehabilitation Services (STAR), all in Houston, Texas.

16. LORETTA N. MBADUGHA (MBADUGHA) was doing business as Bayou Rehab and Family Service, Inc. (BAYOU), in Houston, Texas.

17. VITUS NWOSU OFOMA (OFOMA), doing business as Destiny Healthcare and Rehabilitation Services (DESTINY), in Houston, Texas.

## C. THE CONSPIRACY

18. Beginning in or about 2006, the exact date being unknown, and continuing thereafter to in or about December of 2012, in the Houston Division of the Southern District of Texas and elsewhere, defendants

RACHEL CHUNDENU KIENTCHA-TITA, M.D.;
CHARLES HARRIS, a.k.a.
CELESTINE NWAJFOR , a.k.a.
OKECHI NWAJIOFOR, a.k.a.
CELESTINE NNAJIOFOR;
STELLA UCHEOMA AKWARANDU,
a.k.a. STELLA ADAUGO AKWARANDU;
LORETTA N. MBADUGHA; and
VICTOR NWOSU OFOMA

did knowingly and willfully combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to violate the health care fraud statute, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, namely Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items and services; namely, diagnostic vestibular testing and other services in violation of Title 18, United States Code, Section 1347.

## D. OBJECT OF THE CONSPIRACY

19.     It was the object of the conspiracy for the defendants to unlawfully enrich themselves by falsely and fraudulently representing to Medicare and Medicaid that:

a.     Medicare and Medicaid claims for repetitive diagnostic vestibular testing and physical therapy were medically necessary and/or performed by a licensed person or a person supervised by a physician, when in fact the testing and/or physical therapy was not medically necessary and not performed by a licensed person or a person supervised by a physician;

b.     Medicare and Medicaid claims for repetitive diagnostic vestibular testing were performed, when in fact beneficiaries, many of them in group homes, received a type of "balance therapy" performed by an unlicensed person who was not supervised by a physician; and

c.     Defendant TITA billed for diagnostic vestibular testing and physical therapy that, in fact, was not performed by Defendant TITA, but performed by medically unlicensed Defendants HARRIS, AKWARANDU, MBADUGHA and OFMOA and/or medically unlicensed persons employed by HARRIS, AKWARANDU, MBADUGHA and OFOMA.

## E. MANNER AND MEANS

20.     It was part of the conspiracy that:

21. Defendant TITA, would and did routinely cause Medicare and Medicaid to be repetitively billed for various types of diagnostic vestibular testing and physical therapy on patients knowing that the services had not been performed, were not medically necessary and/or were performed by unlicensed individuals.

22. Defendant TITA, would and did routinely cause Medicare and Medicaid to be repetitively billed for various types of diagnostic vestibular testing and physical therapy without seeing the patient(s) for any follow-up care as a result of the repetitive diagnostic vestibular testing.

23. Defendant TITA, would and did receive remittance notices from Medicare and Medicaid and/or from her biller C.S., reflecting that vestibular diagnostic testing and physical therapy was repetitively billed and paid for Medicare and Medicaid beneficiaries under her Medicare and Medicaid provider numbers.

24. Defendants HARRIS, AKWARANDU, MBADUGHA and OFOMA were not Medicare or Medicaid providers, and would and did not bill Medicare or Medicaid.

25. Defendants HARRIS, AKWARANDU, MBADUGHA, OFOMA would and did send their individual employees or staff who were not licensed physical therapists or licensed audiologists, into patients' homes or group homes to perform some form of vestibular diagnostic testing and/or physical therapy, which was unsupervised by a licensed physician.

26. Defendant HARRIS, AKWARANDU, MBADUGHA, OFOMA would and did submit or cause to be submitted – via a computer – the results of alleged vestibular testing to a physician in Florida, R.N., who would evaluate the results and create a report. This physician was not licensed in Texas.

27. Defendant TITA would or caused to be placed a copy of the Florida doctor's report interpretation of the vestibular testing in some of TITA's individual patient files.

28. Defendant HARRIS, AKWARANDU, MBADUGHA, and OFOMA would and did submit directly to Defendant TITA's medical biller C.S. a preprinted form or "super bill" with seven vestibular codes, with hand-written notes showing the dates of service for each alleged vestibular test, along with the particular patient's name, address, and Medicare beneficiary number.

29. Defendant OFOMA would and did use Defendant HARRIS' faxline associated with Cevine Healthcare, Harris' business to fax "super bills."

30. Defendant TITA would and did use a medical biller C.S., who also billed for other Houston-area physicians, who also submitted bills to Medicare and Medicaid as a result of vestibular diagnostic testing performed by HARRIS, AKWARANDU, MBADUGHA, and OFOMA.

31. Defendants HARRIS, AKWARANDU, MBADUGHA, OFOMA and TITA

10

would not and did not collect or attempt to collect 20 percent co-pays from Medicare beneficiaries whose beneficiary numbers were repetitively billed.

32. Defendants TITA, HARRIS, AKWARANDU, MBADUGHA and OFOMA would and did routinely cause to be submitted to Medicare and Medicaid claims for seven types of vestibular testing, knowing that either none of the services had been performed and/or that only some form of the services had been performed at least one time, but that subsequent diagnostic tests were otherwise unsupervised by a licensed physician or performed by an otherwise unlicensed, unqualified individual, and/or were not medically necessary.

33. Defendant TITA would and did bill vestibular diagnostic testing on some of the same patients that other Houston-area physicians billed upon for vestibular diagnostic testing in the same time frame, including but not limited to physicians E.N. and A.E., and including but not limited to patients T.S., S.M., and D.W.

34. Defendant TITA, HARRIS, AKWARANDU, OFOMA and MBADUGHA, would and did falsely bill Medicare and Medicaid $891,275.46 on diagnostic vestibular codes and physical therapy codes from 2008 through 2012, with $584,937.04 being paid to TITA.

35. From 2008 through 2012, false vestibular diagnostic testing and physical therapy billing would and did represent more than 87 percent of TITA's submitted

11

claims to Medicare and Medicaid, and more than 89 percent of her paid claims from Medicare and Medicaid.

36. Defendant TITA would and did pay OFOMA and/or Destiny Healthcare at least $110,191.41 from TITA's Medstar Bank of America account ending in the last four digits of x5391.

37. Defendant TITA would and did pay AKWARANDU and/or Uchestar at least $136,948.49 from TITA's Medstar Bank of America account ending in the last four digits of x5391.

38. Defendant TITA would and did pay AKWARANDU and/or Uchestar at least $8,376.98 from TITA's Medstar Bank of America account ending in the last four digits of x5401.

39. Defendant TITA would and did pay AKWARANDU and/or Uchestar at least $20,439.23 from TITA's Medstar Bank of America account ending in the last four digits of x7209.

40. Defendant TITA would and did pay OFOMA and/or Destiny at least $13,542.72 from TITA's Medstar Bank of America account ending in the last four digits of x5401.

41. Defendant TITA would and did pay OFOMA and/or Destiny at least $5,252.28 from TITA's Medstar Bank of America account ending in the last four digits of

x7209.

42. Defendant TITA would and did pay MBADUGHA and/or Bayou Rehab at least $4,793.20 from TITA's Medstar Bank of America account ending in the last four digits of x7209.

**F. OVERT ACTS**

43. In furtherance of the conspiracy and to affect the objects thereof, the following Overt Acts, among others, were committed in the Southern District of Texas, and elsewhere,

(1) On or about October 1, 2008, Defendant TITA became enrolled as a Medicare provider, doing business as MEDSTAR.

(2) On or about March of 2009, Defendant TITA became enrolled as a Medicaid provider, doing business as MEDSTAR.

(3) On or about February of 2009, Defendant TITA authorized Medicare to electronically deposit paid Medicare claims into her Bank of America bank account X5401.

(4) On or about March of 2009, Defendant TITA authorized Medicaid to electronically deposit paid Medicaid claims into her Bank of America bank account X5401.

(5) On or about October 2, 2008, Defendant TITA filed incorporation

documents with the Texas Secretary of State for MEDSTAR PRIMARY CARE CLINIC.

(6) On or about August of 2006, HARRIS received an assumed name certificate in Harris County in the name of Cevine Health Care and Rehabilitation Services.

(7) On or about April 18, 2008, HARRIS filed with the Texas Secretary of State incorporation papers for Cevine Health Care and Rehabilitation, Inc.

(8) On or about October 22, 2008, AKWARANDU filed with the Texas Secretary of State incorporation papers for Uchestar Healthcare & Rehabilitation, Inc.

(9) On or about May 18, 2009, AKWARANDU filed with the Texas Secretary of State incorporation papers for Star Rehabilitation Center, Inc.

(10) On or about October 22, 2008, MBADUGHA filed incorporation papers with the Texas Secretary of State for Bayou Rehab and Family Services, Inc.

(11) From on or about April 3, 2009 through on or about November 12, 2009, defendants TITA, HARRIS and OFOMA, and others known and unknown to the grand jury, caused to be submitted to Medicare on approximately 60 different dates of service on seven vestibular diagnostic testing codes for patient R.A. for a total billed amount of $27,097.46 to Medicare, and $17,951.74 paid. A total of 746

vestibular diagnostic tests were billed and allegedly performed.

(12) From on or about March 17, 2009 through on or about June 18, 2009, defendants TITA and AKWARANDU, and others known and unknown to the grand jury, caused to be submitted to Medicare on approximately 22 different dates of service on seven vestibular testing codes for patient B.B. for a total billed amount of $10,529.86 to Medicare, with $7,313.24 being paid. In all, 286 vestibular diagnostic tests were billed and allegedly performed.

(13) From on or about March 20, 2010 through on or about April 24, 2010, defendants TITA and MBADUGHA, and others known and unknown to the grand jury, caused to be submitted to Medicare on approximately 4 different dates of service on five vestibular testing codes for patient C.D. for a total billed amount of $1,319.01 to Medicare.

(14) From on or about April 6, 2009 through on or about July 30, 2009, defendants TITA and AKWARANDU, and others known and unknown to the grand jury, caused to be submitted to Medicare on approximately 32 different dates of service on seven vestibular testing codes for patient R.D. for a total billed amount of $15, 316.16. In all, 416 vestibular diagnostic tests were billed and allegedly performed.

(15) From on or about January 7, 2009 through on or about August 12, 2009,

defendants TITA, HARRIS and OFOMA. and others known and unknown to the grand jury, caused to be submitted to Medicare on approximately 51 different dates of service on six vestibular testing codes and physical therapy codes for patient N.H. for a total billed amount of $22,305.09 to Medicare, and $15,161.29 paid to TITA. In all, 614 vestibular diagnostic tests were billed and allegedly performed.

(16) From on or about May 9, 2009 through on or about November 12, 2009, defendants TITA, HARRIS and OFOMA, and others known and unknown to the grand jury, caused to be submitted to Medicare on approximately 50 different dates of service on seven vestibular testing codes for patient S.M. for a total billed amount of $21,869.42 to Medicare, with $14,971.24 being paid to TITA. In all, 602 vestibular diagnostic tests were billed and allegedly performed.

(17) From on or about January 5, 2009 through on or about August 12, 2009, defendants TITA, HARRIS and OFOMA, and others known and unknown to the grand jury, caused to be submitted to Medicare on approximately 55 different dates of service on seven vestibular testing codes for patient R.R. for a total billed amount of $24,047.77 to Medicare, with $16,461.49 being paid. In all, 662 vestibular diagnostic tests were billed and allegedly performed.

(18) From on or about April 10, 2010 through April 17, 2010 defendant TITA, and others known and unknown to the grand jury, caused to be submitted to

Medicare on approximately 2 different dates of service on seven vestibular testing codes for patient T.S. for a total billed amount of $631.34 billed Medicare, with $397.68 being paid. In all, 20 vestibular diagnostic tests were billed and allegedly performed.

(19) From on or about June 6, 2009 through November 12, 2009 defendants TITA and OFOMA, and others known and unknown to the grand jury, caused to be submitted to Medicare on approximately 44 different dates of service on seven vestibular testing codes for patient M.T. for a total billed amount of $19,255.40 billed Medicare, with $13,182.94 being paid. In all, 530 vestibular diagnostic tests were billed and allegedly performed.

(20) From on or about March 17, 2009 through July 2, 2009 defendants TITA and AKWARANDU, and others known and unknown to the grand jury, caused to be submitted to Medicare on approximately 30 different dates of service on seven vestibular testing codes for patient T.W. for a total billed amount of $14,358.90 billed Medicare, with $9,972.60 being paid. In all, 390 vestibular diagnostic tests were billed and allegedly performed.

(21) In furtherance of the conspiracy, and to effect the objects thereof, the defendant performed and caused to be performed, among others, the acts set forth in Counts 2-10 of this Indictment, which are hereby re-alleged and incorporated as if

17

fully set forth in this Count of the Indictment.

**In violation of Title 18, United States Code, Section 1349.**

## COUNTS 2-10
## HEALTH CARE FRAUD – 18 U.S.C. §§ 1347 AND 2

### A. INTRODUCTION

1. Sections A and B of Count One of this Indictment (Paragraphs 1-17) are re-alleged and incorporated here as though fully set forth herein.

2. Beginning in September of 2006 and continuing thereafter to in or about December 2012, defendants identified herein, billed, caused to be billed, and aided and abetted the billing of false claims to Medicare and Medicaid for diagnostic vestibular testing and physical therapy allegedly provided to Medicare and Medicaid beneficiaries, when in fact, the testing and therapy was not provided, provided by an unlicensed and unsupervised person and/or was medically unnecessary. As a result of this unlawful scheme, Medicare and Medicaid were billed approximately $891,275.46 in submitted, fraudulent vestibular and physical therapy claims, with approximately $584,937.04 being paid.

### B. PURPOSE OF THE SCHEME TO DEFRAUD

3. It was the purpose of the scheme to defraud to obtain money from the Medicare and Medicaid programs by repetitively billing all six vestibular codes, regardless of whether the services were performed, were medically necessary, or

18

were performed by an unlicensed, unsupervised person.

## C. MANNER AND MEANS

4.     Beginning on or about September of 2006, and continuing thereafter in or about December of 2012, in the Houston Division of the Southern District of Texas, the defendants,

RACHEL CHUNDENU KIENTCHA-TITA,  M.D.;
CHARLES HARRIS, a.k.a.
CELESTINE  NWAJFOR , a.k.a.
OKECHI NWAJIOFOR, a.k.a.
CELESTINE NNAJIOFOR;
LORETTA N. MBADUGHA, and
VICTOR NWOSU OFOMA

as identified in the specific counts below, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, namely Medicare and Medicaid, and to obtain by means of material, false and fraudulent pretenses, representations and promises, any of the money and property owned by, and under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items and services, to wit; on or about the listed dates, the defendants caused to be submitted false and fraudulent claims to Medicare for vestibular testing as indicated below:

# TITA AND HARRIS (CEVINE)

| Ct | Patient Medicare/ Medicaid Number | Code | Dates of Service (on or about) | Amount Billed to Medicare | False representation (including but not limited to) |
|---|---|---|---|---|---|
| 2 | Medicare No. x0146A R.A. | Codes: 92541 92542 92543 92545 92546 92547 | 06-01-09 | $435.67 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 3 | Medicare No. X2574A R.R. | Codes: 92541 92542 92543 92545 92546 92547 | 05-13-09 | $435.67 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 4 | Medicare No. X9447A S.M. | Codes: 92541 92542 92543 92544 92545 92546 92547 | 05-28-09 | $435.67 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

## TITA AND MBADUGHA (BAYOU)

| Ct | Patient Medicare/ Medicaid Number | Code | Dates of Service (on or about) | Amount Billed to Medicare | False representation (including but not limited to) |
|---|---|---|---|---|---|
| 5 | Medicare No. x6582A C.D. | Codes: 92541 92543 92546 92547 | 4-17-10 | $315.67 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

## TITA AND OFOMA

| Ct | Patient Medicare/ Medicaid Number | Code | Dates of Service (on or about) | Amount Billed to Medicare | False representation (including but not limited to) |
|---|---|---|---|---|---|
| 6 | Medicare No. X9447A S.M. | Codes: 92541 92542 92543 92545 92546 92547 | 09-29-2009 | $435.67 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

| | | | | | |
|---|---|---|---|---|---|
| 7 | Medicare No. X8984A M.T. | Codes: 92541 92542 92543 92545 92546 92547 | 08-17-09 | $435.67 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 8 | Medicare No. x0146A R.A. | Codes: 92541 92542 92543 92545 92546 92547 | 8-17-09 | $435.67 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 9 | Medicare No. x6194A N.H. | Codes 92541 92542 92543 92545 92546 92547 | 7-23-09 | $435.67 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 10 | Medicare No. x2574A R.R. | Codes 92541 92542 92543 92545 92546 92547 | 7-20-09 | $435.67 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

**All in violation of 18, United States Code, Sections 1347 and 2.**

**NOTICE OF FORFEITURE**
**18 U.S.C. § 982(a)(7)**

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to defendants that upon conviction of conspiracy in violation of Title 18, United States Code, Section 1349, or of a violation of Title 18, United States Code, Section 1347, all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses, is subject to forfeiture.

**Money Judgment**

Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally responsible.

**Property Subject to Forfeiture**

The property subject to forfeiture includes, but is not limited to, the following property:

(1) $584,937.04 or more, in gross proceeds obtained from the conspiracy charged in Count 1 of the Indictment.

(2) all money obtained from the scheme to defraud, including, but not limited to, the money stated in Counts 2-10 of the Indictment.

**Substitute Assets**

Defendants are notified that in the event that property subject to forfeiture, as a

result of any act or omission of defendants,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided

without difficulty,

the United States will seek to forfeit any other property of the defendant up to the

total value of the property subject to forfeiture, pursuant to Title 21, United States

Code, Section 853(p) incorporated by reference in Title 18, United States Code,

Section 982(b)(1).

A TRUE BILL

Original signature on File

_____
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

BY: _____
Suzanne Bradley
Special Assistant United States Attorney