**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON  DIVISION**

**SEALED**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **vs.** | § | **14-cr-195s (01)** |
| | § | |
| | § | |
| **RACHEL CHUNDENU** | § | |
| **KIENTCHA-TITA, M.D.** | § | |
| **Defendant** | | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Suzanne Bradley, Special Assistant United States Attorney, and Defendant Rachel Chundenu Kientcha-Tita, M.D., and Defendant's counsel, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.     Defendant agrees to plead guilty to Count 1 of the First Superseding Indictment.  Count 1 charges Defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code,  §§1349 and 1347.  Defendant, by entering this plea, agrees that she is waiving any right to have the facts that the

1

law makes essential to the punishment either charged in the Indictment or proven to a jury or judge beyond a reasonable doubt.

## Punishment Range

2.    The **statutory** maximum penalty for a violation of Title 18, United States Code, § 1349 is a term of imprisonment of not more than 10 years and a fine of not more than $250,000, or twice the pecuniary gain or loss pursuant to 18, United States Code, section 3571(d), whichever is greater. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years for both charges.  Title 18, United States Code, §§ 3559(a) and 3583(b).  Defendant acknowledges and understands that if she should violate the conditions of any period of supervised release which may be imposed as part of her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, United States Code, §§ 3559(a) and 3583(e)(3).   Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for parole.

## Mandatory Special Assessment

3.    Pursuant  to  Title  18,  United  States  Code,  §  3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States

District Court a special assessment in the amount of one hundred dollars ($100.00), representing a $100 per count of conviction.  The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas  77208, Attention: Finance.

## Immigration Consequences

4.      If Defendant is not a citizen of the United States, a plea of guilty may result in deportation, removal, and/or exclusion from admission to the United States, or the denial of naturalization.  A plea of guilty may also result in Defendant being permanently barred from legally entering the United States after being deported, removed, and/or excluded.  Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Cooperation

5.      The parties understand this Agreement carries the potential for a motion for departure under § 5K1.1 of the United States Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas.  Should Defendant's cooperation, in the sole judgment

and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to § 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraphs 30-37 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.    Defendant understands and agrees that the usage "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant, including, but not limited to, health care fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)    Defendant agrees that this Plea Agreement binds only the United States Attorney for the Southern District of Texas and Defendant, and that it does not bind any other United States Attorney or other component or unit of the Department of Justice;

(b)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive her Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

(c)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

4

(d)    Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)    Defendant agrees to provide to the United States all documents in her possession or under her control relating to all areas of inquiry and investigation.

(f)    Should the recommended departure, if any, not meet Defendant's expectations, Defendant understands she remains bound by the terms of this Agreement and that she cannot, for that reason alone, withdraw her plea.

### Waiver of Appeal

7.    Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal

following the imposition of the sentence or later collaterally attacks her conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that she may have received from her counsel, the United States, or the Probation Office, is a prediction, not a promise, and such estimate **did not induce her guilty plea** and is binding on neither the United States, the Probation Office, nor the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

## The United States' Agreements

10.    The United States agrees to each of the following:

(a)    If Defendant pleads guilty to Count 1 of the First Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this Plea Agreement, the United States will move to dismiss the original indictment and Counts Two through Ten of the First Superseding Indictment against Defendant Tita at the time of sentencing;

(b)    At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that she receive a two (2) level downward adjustment under § 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines (U.S.S.G.);

(c)    If Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States may move for an additional one (1)-level downward adjustment based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding her role in the offense;

(d)    The Defendant and the United States agree to recommend to the Court that the intended loss amount is under §2B1.1(b)(1)(H) of the United States Sentencing Guidelines; and

(e)    The Defendant and the United States agree to recommend to the Court that the restitution amount to Medicare and Medicaid is $590,262.41.

**Agreement Binding - Southern District of Texas Only**

11.    The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the original indictment and the First Superseding Indictment. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.  It does not bind any other United States Attorney.  The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

**United States' Non-Waiver of Appeal**

12.    The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines.  Specifically, the United States reserves the right:

(a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)    to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a); and

(e)    to appeal the sentence imposed or the manner in which it was determined.

8

**Sentence Determination**

13.    Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

**Rights at Trial**

14.    Defendant represents to the Court that she is satisfied that her attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, she surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

9

(a)     If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.  The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and her attorney would be allowed to cross-examine them.  In turn, Defendant could, but would not be required to, present witnesses and other evidence on her own behalf.   If the witnesses for Defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court.

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.  However, if Defendant desired to do so, she could testify on her own behalf.

### Factual Basis for Guilty Plea

15.   Defendant is pleading guilty because she is guilty of the charges contained in Count 1 of the Superseding Indictment.  If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.  The following facts, among others would be offered to establish Defendant's guilt:

16.   Beginning in 2008 and through December of 2010, Defendant Dr. Tita doing business as Medstar Primary Care Clinic, located in Houston, Texas, knowingly, intentionally and willfully engaged in health care fraud and health care

fraud conspiracy with Defendant Vitus Ofoma, doing business as Destiny Healthcare and Rehabilitation Services; with Stella Akwarandu, doing business as Patstel Healthcare and Rehabilitation Services, Uchesstar Healthcare & Rehabilitation Services, and as Star Rehabilitation Center, Inc.; and with Loretta Mbadugha, doing business as Bayou Rehab and Family Service, Inc. All were located in Houston, Texas.

17.    Defendant Tita, licensed as a physician in Texas, allowed her physician Medicare and Medicaid provider numbers to be billed upon fraudulently by Ofoma, Akwarandu and Mbadugha, when in fact the services billed for were either medically unnecessary, not performed, or performed by unlicensed individuals.    Tita, Ofoma, Akwarandu and Mbadugha would then split the proceeds based upon what Medicare and Medicaid would ultimately pay on the vestibular testing claims.

18.    Defendants Ofoma, Akwarandu, Mbadugha, and Dr. Tita routinely caused Medicare and Medicaid, which are both health care programs that affected interstate commerce, to be repetitively billed for various types of diagnostic vestibular testing on patients. Most patients' billings reflect that these patients were supposedly tested hundreds of times, and sometimes every other day for

months at a time.  A patient normally would only need one or two such batteries of tests in a lifetime.

20.   Defendant Tita and Ofoma falsely billed hundreds of vestibular diagnostic tests on patient R.A.  From April 3, 2009 through November 12, 2009, Defendants Ofoma and Dr. Tita caused Medicare to be billed $27,097.46 for patient R.A., representing 746 tests under seven diagnostic vestibular codes that were either not provided, not medically necessary and/or not performed by licensed or supervised persons.

21.   Defendant Tita and Mbadugha falsely Medicare billed $1,319.01 for patient C.D., under five diagnostic vestibular diagnosis codes that were either not provided, not medically necessary and/or not performed by licensed or supervised persons.

22.   Defendant Tita and Akwarandu falsely billed hundreds of diagnostic vestibular tests on patient R.D.  Defendants Tita and Akwarandu caused Medicare to be billed $15,316.16 for patient R.D., representing 416 tests under seven vestibular diagnostic codes that were either not provided, not medically necessary and/or not performed by licensed or supervised persons.

23.   Defendants Ofoma, Akwarandu and Mbadugha would send "superbills" to Defendant Dr. Tita's biller, C.S., who would submit to Medicare the

vestibular claim information using Tita's provider number. The superbill was a preprinted with seven vestibular codes, and would contain hand-written notes showing the dates of service for each alleged vestibular test, along with the particular patient's name, address, and Medicare beneficiary number. All the Defendants used the same superbill form reflecting the same vestibular diagnostic codes.

24.     Defendants Ofoma, Akwarandu and Mbadugha sent their employees who were not licensed physical therapists or licensed audiologists, into patients' homes to perform some form of vestibular testing and/or "balance training," which was wholly unsupervised by Defendant Dr. Tita. Defendants Ofoma, Akwarandu, and Mbadugha were not licensed physical therapists, audiologists, or physicians, nor were any of their employees. Medicare and Medicaid require physical therapy and vestibular testing to be supervised licensed physician who must be in the building where the patient care is being performed, or it must be performed by a licensed physical therapist or licensed audiologist.

25.     Defendants  Ofoma, Akwarandu, and Mbadugha all would submit or cause to be submitted – via a computer – the results of the alleged vestibular testing to a physician in Florida, who would evaluate the results and create a report. This physician was not licensed in Texas and was paid $50 for each

evaluation. Defendant Tita placed a copy of the Florida doctor's report interpretation of the vestibular testing in some of Tita's individual patient files.

26. Many of the patients billed by Defendants Tita, Ofoma, Akwarandu, and Mbadugha lived in group homes and were severely disabled, mentally and physically. Many of these Medicare and Medicaid patients were schizophrenics, bipolar and/or had personality disorders. The Medicare claims data and superbill records show many of these group home patients lived at the same addresses, were all diagnosed and all billed for the same vestibular diagnostic tests over and over again. Defendant Dr. Tita's patient files on some of the patients show she knew patients were receiving medications that treat mental illnesses.

27. Some patients billed by Dr. Tita were also billed by other Houston physicians for the same vestibular diagnosis codes, including but not limited to patient T. S. In the time frame of the indictment, the Medicare and Medicaid funds received by Defendant Dr. Tita solely for the vestibular diagnostic testing represented more than half of her Medicare and Medicaid income.

28. As a result of this overall fraudulent scheme, Medicare and Medicaid, which are both health care benefit programs affecting commerce, were billed approximately $693,554.77, with approximately $456,622.32 being paid by Medicare and $33,640.09 begin paid by Medicaid to Defendant Tita. Defendant

Dr. Tita received 40 percent of proceeds of this fraud, with Defendants Ofoma, Akwarandu and Mbadugha receiving 60 percent. Thus, Dr. Tita received $236,104.96.

## Breach of Plea Agreement

29.    If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand.  If at any time Defendant retains, conceals or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.  Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

## Restitution, Forfeiture, and Fines

30.    This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that she will make a full and complete disclosure of all assets over which she exercises direct or indirect control, or in which she has any financial interest. Defendant agrees not to dispose of any assets

or take any action that would affect a transfer of property in which she has an interest, unless Defendant obtains the prior written permission of the United States.

31.    Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

32.    Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.  Defendant also agrees to direct any banks, which have custody of her assets to deliver all funds and records of such assets to the United States.

33.    Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

34.    Defendant agrees to pay full restitution to the victims regardless of the counts of conviction.  Defendant stipulates and agrees that as a result of her criminal conduct, the victims of Medicare and Medicaid incurred a monetary loss of at least $590,262.41.  Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s).  Defendant agrees that restitution imposed by the Court will be due and payable immediately, and that Defendant will not attempt to avoid or delay payment.  Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Money Judgment

35.    Defendant stipulates and agrees that the factual basis for her guilty plea supports the forfeiture of at least $590,262.41 against her and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment for the amount against her and in favor of the United States.  Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United

States Code, section 853(p) exists. Defendant agrees to forfeit any of her property, or her interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

36.    Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

37.    Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Rule 32.2(b)(4)(A), Fed.R.Crim.Pro.

38.    Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

39.    Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

40.    This written Plea Agreement, consisting of 22 pages, including the attached addendum of Defendant and her attorney, constitutes the complete Plea Agreement between the United States, Defendant, and her counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against her and that she is pleading guilty freely and voluntarily because she is guilty.

41.    Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _March 11_, 2015.

_____
Defendant

Subscribed and sworn to before me on _March 11_, 2015.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By: _____        _____
Suzanne Bradley                             Robert Jones
Special Assistant U.S. Attorney             Defense Counsel
Southern District of Texas

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON  DIVISION

**SEALED**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| vs. | § § § | 14-cr-195s (01) |
| RACHEL CHUNDENU KIENTCHA-TITA, M.D.<br>     Defendant | § § § | |

## PLEA AGREEMENT  - ADDENDUM

I have fully explained to Defendant her rights with respect to the pending Indictment.  I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.  Further, I have carefully reviewed every part of this Plea Agreement with Defendant.  To my knowledge, Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____
Robert Jones
Attorney for Defendant

Date: 03/11/15

21

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.   My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.  I have read and carefully reviewed every part of this Plea Agreement with my attorney.  I understand this Agreement and I voluntarily agree to its terms.

_____                    Date: 03/11/2015
Rachel C. Kientcha-Tita, M.D., Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| vs. | § | CRIMINAL NO. H-14-195-1 |
| | § | |
| RACHEL CHUNDENU KIENTCHA-TITA | § | |

**REPORT AND RECOMMENDATION**
**ON GUILTY PLEA**

This case was referred by Judge Lee H. Rosenthal pursuant to 28 U.S.C. § 636(b)(3), for proceedings under Rule 11 of the Federal Rules of Criminal Procedure. All parties executed a waiver of the right to plead guilty before a United States district judge, as well as a consent to proceed before a magistrate judge. On March 11, 2015, the defendant and her counsel appeared before this court, and she was informed of the admonishments under Rule 11 of the Federal Rules of Criminal Procedure. The court determined that the defendant was competent to plead guilty and fully understood those admonishments. The defendant agreed to plead guilty to Count 1 of the Superceding Indictment (violation of Title 18, United States Code, Section 1349). Any other counts are to be dismissed at sentencing. The court explained that the district court will consult the Sentencing Guidelines promulgated by the United States Sentencing Commission in determining the defendant's sentence. The court also explained the range of punishment with regard to imprisonment, fines, restitution, supervised release, and the statutory fee assessment pursuant to the Victims of Crimes Act. The magistrate judge finds the following:

1. The defendant, with the advice of her attorney, has consented orally and in writing to enter her guilty plea before the magistrate judge, subject to final approval and sentencing by the district judge;

2. The defendant fully understands the nature of the charges and penalties;

3. The defendant understands her constitutional and statutory rights and wishes to waive these rights;

4. The defendant's plea is made freely and voluntarily;

5. The defendant is competent to enter her plea of guilty; and

6. There is an adequate factual basis for her plea.

## Recommendation

It is **RECOMMENDED** that the district court accept the plea of guilty and enter final judgment of guilt against the defendant.

## Warnings

The parties may file objections to the report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n. 8 (5th Cir. 1982) (en banc)). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days after being served with a copy of the report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the district court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53

2

(1985); *Douglass v. United Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).  The Clerk is directed to send a copy of this report and recommendation to all parties.

SIGNED this 11th day of March, 2015.

MARY MILLOY
UNITED STATES MAGISTRATE JUDGE

3